# In re Marriage of Lewis duPont Smith and Andrea Diano-Smith

*James R. Ledwith,* for Wilmington Trust, guardian.

*David S. Foulke,* for E. Newbold Smith.

*Sandra Swenson,* for Andrea Diano-Smith.

*James B. Crummett,* for Lewis duPont Smith.

WOOD, *J.,* August 27, 1987 — On June 11, 1987, Andrea Diano-Smith started an action for declaratory judgment pursuant to 23 P.S. §206, asking this court to rule that her purported marriage to Lewis duPont Smith is valid. E. Newbold Smith filed an answer and new matter on June 23, 1987. Counsel for E. Newbold Smith scheduled a deposition of plaintiff on July 23, 1987. During that deposition, plaintiff declined to answer a number of questions regarding her political and religious beliefs.

Subsequently, plaintiff filed a motion for a protective order, claiming that information relating to her political associations and political and religious beliefs was privileged, based on the First Amendment rights of free association, free speech, and privacy.

Such a privilege has been recognized and developed by the courts in an attempt to preclude govern-

mental investigation into the identity of one's political associates through litigation. See *NAACP v. Alabama,* 357 U.S. 449, 78 S. Ct. 1163, 2 L.Ed.2d 1488 (1958); *Black Panther Party v. Smith,* 661 F.2d 1243 (D.C. Cir. 1981); *Britt v. Superior Court,* 20 Cal.3d 844, 143 Cal. Reptr. 695, 574 P.2d 766 (1978). The privilege has also held to apply to discovery between private litigants: *Adolph Coors Co. v. Wallace,* 570 F. Supp. 202 (N.D. Cal. 1983); *Britt v. Superior Court, supra.* The purpose of the privilege is to prevent unnecessary disclosure of a group's membership lists or list of financial contributions, since this information goes to the heart of a group's associational activities and exposes the membership to possible retaliation. See *Shelton v. Tucker,* 364 U.S. 479, 81 S. Ct. 247, 5 L.Ed.2d 231 (1960); *Britt v. Superior Court, supra,* 574 P.2d at 772. "Under this privilege, once a litigant has raised a substantial claim by showing that the discovery request is directed at the heart of a group's protected associational activities, the court is required to subject the request to a higher level of scrutiny": *Wilkinson v. FBI,* 111 F.R.D. 432, 436 (1986).

"The privilege is qualified, not absolute; therefore, it cannot be used as a blanket bar to discovery. Instead, the court must apply a balancing test to the dispute at issue, essentially requiring both a heightened degree of relevance to the subject matter of the suit and a showing by the party seeking discovery that it has made reasonable, unsuccessful attempts to obtain the information elsewhere." *Id.*

A three-part test was formulated in *Adolph Coors Co. v. Wallace, supra:*

"(1) ascertain whether the precise material sought by discovery is truly 'relevant' to the gravaman of the complaint; (2) if 'relevant,' the court must balance the rights and interests of each

litigant, the particular circumstances of the parties to the controversy, and the public interest in over-ruling the private litigants' representations as to re-sultant injury or to unavoidable need; and (3) a con-clusion that the discovery request, as framed, is the means least inclusive and intrusive for gathering the information to which the party has been deemed entitled." 570 F. Supp. at 208. Thus my decision whether to allow plaintiff to be questioned about her religious and political beliefs is at heart a question of relevancy.

One of the key questions in this litigation con-cerns Ms. Diano-Smith's motivation. In my adjudi-cation of November 12, 1985, I found that by reason of mental illness, Lewis was unable to manage his property or was liable to dissipate it or become the victim of designing persons. The evidence at that time indicated that "the exploitation has already be-gun, and that Lewis, because of his particular men-tal makeup, has succumbed to the blandishments of the LaRoach (sic) organization." I also concluded that this was just the sort of situation the legislature intended to guard against when it granted power to the Orphans' Court to appoint guardians. This pro-tective power extends even into the realm of mar-riage, for under 48 P.S. §1-5(d) no marriage license shall be issued in Pennsylvania to a person under guardianship as a person of unsound mind unless a judge of the Orphans' Court shall decide that it is for the best interest of the applicant and the general public to issue the license. Since the decision to marry is not only an important personal decision but also one which has a far-reaching effect on one's estate, the policy behind these protective statutes requires me to consider whether Andrea, either for herself or on behalf of an organization with which she may be connected, is one of those very "design-

ing persons" from whom Lewis, in my judgment, needs protection. In short, I must attempt to discern Andrea's true purpose in wishing to be married to Lewis. Andrea's political beliefs and the extent of her dedication to the LaRouche organization go to the very heart of this inquiry. In addition, her religious beliefs are relevant since she purports to have been married in a religious ceremony.

I must next consider whether there is any overriding constitutional interest which would nonetheless foreclose inquiry, and whether the inquiry can be controlled in such a way as to make it less obtrusive.

Plaintiff has not shown that this disclosure will impair her associational activities (see *Wilkinson v. F.B.I., supra*) especially since she has openly professed her affiliations and has sought publicity for her involvement with LaRouche. I conclude that the relevance of the information sought about plaintiff's own political and religious beliefs and activities outweighs her constitiutional interests in the privacy of her thoughts: see *Adolph Coors Co. v. Wallace, supra*. She has not asked me to seal the record on her testimony, but rather to bar the testimony altogther. I won't do the latter, but might do the former, if that would solve the problem. Otherwise, I see no alternative but to permit her to be questioned regarding her beliefs and motives.

## ORDER

And now, August 26, 1987, upon consideration of plaintiff's motion for a protective order, and after argument, Andrea Diano-Smith is directed to answer those questions at deposition which deal with her own religious and political beliefs, her own political activities, and her motivations in becoming involved with Lewis duPont Smith. Plaintiff will not be re-

quired to respond to questioning seeking names and addresses of members of any political party or group or structural aspects of any organization.